COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Alston and Senior Judge Coleman


AJARY ROBERTS, SR., SOMETIMES KNOWN AS
  AJARY D. ROBERTS, JR.

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0338-10-3                           PER CURIAM
                                                       AUGUST 31, 2010
HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                         Thomas J. Wilson, IV, Judge

                  (William G. Wentz, on brief), for appellant.  Appellant submitting
                  on brief.

                  (Kimberly Van Horn Gutterman, Assistant County Attorney;
                  Sheila R. Keesee, Guardian *ad litem* for the minor children, on brief),
                  for appellee.  Appellee and Guardian *ad litem* submitting on brief.


        Ajary Roberts, Sr., s/k/a Ajary D. Roberts, Jr. (father), appeals the trial court's order

terminating his parental rights to his two children, N.R. and L.R.[1]  Father argues the trial court erred

in (1) allowing Laura Cantrell, an in-home worker for Family Educational Services (FES),[2] to

testify as to the children's "interaction with their foster mother"; and (2) allowing Kate Bowman, a

foster care social worker, to testify the foster mother has experience in fostering children.  We

disagree and affirm the decision of the trial court.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] We will refer to the children by their initials.

        [2] FES was hired by the Harrisonburg Rockingham Social Services District to assist
families in regaining custody of their children.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

L.R. was born in December 2004, and N.R. was born in July 2006. In early 2007, L.R. and N.R.'s mother left the marital home she shared with appellant for New York.[3] Appellant was approximately fifty-seven years old when his wife left L.R. and N.R. in his care; he was hard of hearing and had been struggling with a substance abuse problem for thirty years. On November 2, 2007, the children were removed on a CHINS (Children in Need of Services) petition due to chronic neglect.[4] At the time of removal from the home, the children were dirty, unattended, living in unsafe housing conditions, and were extremely developmentally delayed. While the children were in foster care for over two years, father was unable to remedy the unsanitary and unsafe housing conditions or comply with the terms of proposed substance abuse recovery courses.

Citing Code § 16.1-283(C)(2), the trial court concluded that, without good cause, father failed to remedy substantially the conditions which led to L.R.'s and N.R.'s foster care placement within a reasonable time. The trial court terminated father's parental rights,[5] and father timely noted his appeal.

ANALYSIS

On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley [v. Farley], 9 Va. App. [326,] 329, 387 S.E.2d [794,] 796 [(1990)]. . . . The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly

---

[3] Mother returned from New York shortly after the children were placed in foster care.

[4] An older half-brother, D.P., was also removed from the home at that time.

[5] Mother's parental rights to the two children were terminated in the same hearing.

wrong or without evidence to support it." Peple v. Peple, 5
Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

### Testimony Regarding The Foster Mother's Experience

At trial, counsel for Harrisonburg Rockingham Social Services District asked Bowman what experience N.R.'s and L.R.'s foster mother had in fostering children. Appellant objected to the line of questioning, arguing that it was irrelevant. The trial court sustained appellant's objection to any further testimony from Bowman regarding the foster mother's experience in fostering children, and Bowman did not provide a response to the question. As such, we conclude there is no appealable issue with respect to Bowman's testimony.

### Testimony Regarding L.R.'s and N.R.'s Relationship with their Foster Mother

At trial, Cantrell testified that L.R. and N.R "clearly love" their foster mother, are "very connected" to her, and "[g]et excited when they see her." Appellant contends that in determining whether parental rights should be terminated, the appropriate inquiry is whether the parent had been unwilling or unable to remedy the conditions that led to the continuation of foster care. He asserts the trial court erred in admitting testimony regarding the bond the foster mother had with L.R. and N.R., because "[w]hether . . . the children are better off with their foster parents than with their natural parents is not probative." We disagree.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. Under Virginia law, evidence of the child's relationship with a foster parent and progress in foster care is admissible, and we have previously considered such evidence when determining whether termination of parental rights is in the child's best interests. See Norfolk Div. of Soc. Servs. v. Hardy, 42 Va. App. 546, 555-56, 593 S.E.2d 528, 537 (2004) (confirming trial court's decision to deny petition for termination of parental rights

where children had a strong bond with foster mother, foster mother could not adopt the children, and termination of parental rights would require the children be removed from foster mother's home in preparation for adoption; termination of parental rights was not in the child's best interests).[6]

Here, the trial court explained it would allow testimony regarding the foster mother's relationship with the children to specifically address "the question of best interest[s]." In addition to hearing testimony that N.R. and L.R. were thriving in their new environment, it also heard testimony that the developmental and speech delays the children had when they entered foster care had been appropriately addressed.[7] Because L.R.'s and N.R.'s relationship with their foster mother was relevant to assessing the children's developmental and emotional growth, we cannot conclude the trial court erred in admitting and considering Cantrell's statements regarding that relationship as part of its determination of whether termination of father's parental rights was in the best interests of the children.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.

---

[6] In his brief, appellant misinterpreted the holding of Hardy when he argued that the Court only considered the stability provided by the foster home, and not whether the children were thriving in their new environment.

[7] The trial court concluded that termination of parental rights was appropriate because (1) father never acknowledged "there was anything inappropriate as to the way the children were being cared for" when they were removed from his home; (2) "there was a substantial substance abuse risk and history"; (3) there were marital stability risks and issues; (4) caring for the children was overwhelming for father; and (5) father was "set in his ways" and not willing to change his behavior or parenting style. It also concluded father had been offered numerous behavioral as well as financial services to help him regain custody of his children and he was not motivated to participate in those programs.